IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HARRIET KUHN<br>8705 Lowell St.<br>Bethesda, MD 20817 | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | Civil Action No. |
| v. | )<br>) | |
| THE DISTRICT OF COLUMBIA<br>1350 Pennsylvania Ave., NW<br>Washington, DC 20004 | )<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT
### (Retaliation and Age Discrimination in Employment)

1. The District of Columbia fired Harriet Kuhn after twenty-five years of exceptional service, because she engaged in protected activity by raising concerns about discrimination and filing a complaint with the U.S. Equal Employment Opportunity Commission (EEOC) and/or because of her age. Defendant's actions violated Kuhn's rights under Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA) and the District of Columbia Human Rights Act (DCHRA).

### Jurisdiction and Venue

2. This is an action under Title VII of the Civil Rights Act of 1964, the ADEA and the DCHRA to remedy defendant's unlawful termination of plaintiff's employment with the District of Columbia Public Schools (DCPS). This Court has jurisdiction pursuant to 42 U.S.C. §§ 2000e-5(f)(3) and 28 U.S.C. § 1332, 29 U.S.C. §§ 621 et seq., and D.C. Code §§ 2-1401.01 et seq. Venue lies in this Court as the unlawful employment practices challenged in this action took

place in the District of Columbia.

## Parties

3. Plaintiff Harriet Kuhn is a resident of the State of Maryland. Plaintiff is 54 years old.

4. The named defendant in this action is the District of Columbia; the actual employer was the DCPS.

## Facts

5. Harriet Kuhn excelled in her position as a School Psychologist in her employment with DCPS for nearly twenty-five years. Kuhn received outstanding evaluations for the first two decades of her employment with DCPS. As DCPS switched over to the IMPACT evaluation system, she then received several years of "Highly Effective" or "Effective" evaluations. Over the years, Mrs. Kuhn received a number of different grants from organizations including the American Federation of Teachers Robert G. Porter Scholars Program, the National Association of School Psychologist's Children's Fund, Donor's Choose and the Downtown Jaycees. These grants were used to teach empathy, kindness and enriched many student's experience in DCPS. Throughout her career, as a result of her work with students, Kuhn periodically received thank you notes with expressions of gratitude from parents. Additionally, teachers and principals have praised her work.

6. During 2014, Kuhn was serving as the School Psychologist at Lafayette Elementary School on Broad Branch Road, in Northwest Washington, D.C. The principal of Lafayette at that time was Carrie Broquard, who joined Lafayette in July 2014.

7. In late September of that year, Kuhn, who is Jewish, requested time off from work to observe the Jewish holiday of Rosh Hashanah. Broquard appeared to be irritated by this

request, and did not initially grant it. Instead, Broquard denied Kuhn's request to make up the time and required her to take "annual leave" to observe her religious faith. Kuhn discussed the issue with other Jewish employees, who had been subject to the same treatment by Broquard. Kuhn was required to inform Broquard that she intended to elevate the issue to higher levels of DCPS management, which resulted in Broquard eventually changing her position and granting the request to make up the time.

8. These actions – Kuhn's request for time off to observe a religious holiday, and her statement that she intended to raise her concerns with DCPS management when her Principal bristled at the request, were protected activities under the law. When Carrie Broquard learned of Kuhn's protected activities, she began to retaliate by, among other things, giving Kuhn a lower than deserved performance appraisal rating, docking her pay for attending a work conference, and reducing the number of hours that Kuhn was assigned to work at Lafayette (from a .8 FTE to a .5 FTE) in March 2015. Kuhn also raised concerns that Broquard was targeting older employees within the school, including herself, for adverse treatment. During the spring of 2015, Kuhn raised concerns about this discriminatory and retaliatory treatment with several members of DCPS leadership.

9. On May 19, 2015, Kuhn filed a charge with the Washington Field Office of the U.S. Equal Employment Opportunity Commission (EEOC), alleging that she had been subjected to unlawful religious and age discrimination and reprisal. This action was protected activity under the law.

10. On July 26, 2016, while that charge was pending before the EEOC, DCPS terminated Kuhn's employment. DCPS claims it fired Kuhn for having made a mistake by entering incorrect information into the Special Education Data System (SEDS) about a student.

When interviewed about the issue, Kuhn admitted that she had made a mistake, apologized and pledged to be more careful in her future reports. There was no basis to contend, and DCPS did not find, that Kuhn had intentionally included false information in her report, or had any reason to do so.

11. DCPS seized upon this mistake to terminate Kuhn's employment after more than twenty-five years of successful service. DCPS ignored the standard procedure of progressive discipline, and jumped immediately to the most extreme punishment possible for a minor offense. There is no record of DCPS having terminated any other School Psychologist for having unintentionally made a mistake in SEDS reporting (or any similar reporting mistake), and this mistake was not the actual reason for firing Kuhn. It was instead used as a pretext to terminate her employment in reprisal for her protected activity under the law and/or her age.

12. The accusations which led to Kuhn's termination were raised by Principal Broquard in February 2016, at a time when she was aware that Kuhn was prosecuting a charge of discrimination and retaliation involving Broquard with the EEOC.

13. The DCPS officials who participated in the decision to terminate Kuhn's employment were aware at the time that they made the firing decision that she had filed a charge of discrimination and retaliation with the EEOC.

14. The decision to terminate Kuhn was motivated by unlawful reprisal for her protected complaints of discrimination and retaliation and/or her age, and was willful and malicious and/or in reckless disregard of her rights under the law to be free from discrimination and retaliation.

15. The unlawful actions described above inflicted significant harm on Kuhn, including the denial of productive employment, financial harm, humiliation, emotional distress

and loss of enjoyment of life.

## Exhaustion of Administrative Remedies

16. Kuhn timely filed a charge of discrimination and retaliation over the termination with the EEOC. On April 11, 2017 the EEOC closed its investigation of Kuhn's complaints and issued her a notice of right to sue. All prerequisites to suit have been satisfied, and this lawsuit is timely filed.

## VIOLATIONS OF LAW

### COUNT ONE
### (RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE ADEA AND THE DCHRA)

17. Paragraphs 1-16 are re-alleged.

18. Defendant terminated Kuhn's employment because of her protected activity in violation of Title VII of the Civil Rights Act of 1964, the ADEA and the District of Columbia Human Rights Act.

### COUNT TWO
### (AGE DISCRIMINATION IN VIOLATION OF THE DCHRA AND ADEA)

19. Paragraphs 1-16 are re-alleged.

20. Defendant terminated Kuhn's employment because of her age in violation of the ADEA and the District of Columbia Human Rights Act.

WHEREFORE, Plaintiff requests that this Court:

1) Declare that Defendant has violated the law, and enjoin Defendant from any further acts of discrimination and/or retaliation against Plaintiff;

2) Order that Defendant reinstate Plaintiff into her position as School Psychologist with DCPS, or any equivalent position, with all attendant back pay, benefits and privileges of her

employment, retroactive to the date of her unlawful discharge.

3) Award Plaintiff compensatory damages in an amount to be proven at trial;

4) Award Plaintiff punitive damages in an amount to be proven at trial;

5) Award Plaintiff liquidated damages under the ADEA;

6) If the Court determines, for whatever reason, not to reinstate Plaintiff into a position of employment with DCPS, then alternatively award Plaintiff front pay to compensate for her future financial loss;

7) Award Plaintiff the costs and reasonable attorneys' fees incurred in prosecuting her claims and in this action;

8) Award Plaintiff pre-judgment interest on all monetary sums requested above;

9) Award such other relief as the Court deems just.

## JURY DEMAND

Plaintiff requests trial by jury on all issues in this case.

_/s/ Richard A. Salzman_
Richard A. Salzman  422497
Heller, Huron, Chertkof
& Salzman
1730 M St., NW Suite 412
Washington, DC 20036
(202) 293-8090